Farrington *v.* Bullard.

---

# FARRINGTON *vs.* BULLARD.

A promise, by one person, having no other inducement or consideration than the naked promise of another to do in a few days what he is, in law, bound to do *in stanter,* is — considered as an agreement — simply a *nudum pactum ex quo non oritur actio.*

So held where F. being sued by B. for rent, promised to pay the amount actually due in a few days, if B. would discontinue the suit; whereupon B. promised to discontinue it.

*Held,* also, that no action on the case would lie against B. for fraud, upon his failure to perform his promise to discontinue the suit, and going on with the suit and recovering judgment therein.

*Held,* further, that F.'s remedy was by a direct action to set aside the judgment, on the ground that it was fraudulently obtained. That he could not pay the judgment and then sue, and recover the damages occasioned by the fraud; inasmuch as that would involve the necessity of inquiring collaterally, into the fairness and validity of the former judgment.

Farrington *v.* Bullard.

An action upon a promise to discontinue a suit, is to be deemed an action on a contract of which a justice has jurisdiction; notwithstanding an averment in the complaint that the defendant falsely and fraudulently promised the plaintiff that he would discontinue the action.

Previous to the amendment of section 53 of the code, in 1862, justices of the peace had not jurisdiction of actions on the case for fraud in obtaining a judgment.

APPEAL from a judgment of the county court of Saratoga county, reversing the judgment of a justice of the peace. The action was brought to recover damages for the fraud and deceit of the defendant, whereby the plaintiff had been prevented from interposing a defense to an action pending before a justice of the peace. The facts as disclosed on the trial, and found by the justice, were as follows: That, in the month of February, 1859, Samuel Gibbs, and Dolly Bullard, wife of the defendant, were the owners of a house and lot in the village of Saratoga Springs; that in that month, the defendant, as agent of the owners, rented the house to the plaintiff, at three dollars per month, until the first of May then following. That about the last mentioned day, there was a conversation between the plaintiff and defendant, in which the defendant asked the plaintiff to take the house for the following year, which the plaintiff expressly declined to do, saying that he would pay for the house for the time that he occupied it, but no longer. That the plaintiff continued to occupy the house, and about the 21st of October, 1859, the defendant obtained a summons from a justice, in favor of Samuel Gibbs, Dolly Bullard and himself, as husband of the last named party, against the plaintiff, which summons was returnable on the 27th of the same month; that on the return day of said summons, about 9 o'clock A. M. the plaintiff called upon the defendant and had a conversation with him, in which the plaintiff promised to pay the amount actually due, in a few days, and the defendant promised to discontinue the suit. That the plaintiff, relying on this promise, returned home and the defendant immediately went to the justice's office, and by falsely testifying that the house was rented for one

year, for $50, payable in advance, obtained a judgment against the plaintiff for that amount. That the defendant then waited till the expiration of twenty days from the recovery of the judgment, that is to say, until the time to appeal had passed by, and then filed a transcript of the judgment in the county court, and issued execution against the plaintiff, which, with interest and costs, amounting to $57.71, was collected by the sheriff. This action was brought by the plaintiff, in a justice's court, to recover damages for the deceit and fraud of the defendant, as above related, and judgment was obtained against him before the justice, for the sum of $42.86, damages and costs: which judgment was reversed by the county court.

*Merrill & Cowen,* for the appellant.

*John R. Putnam,* for the respondent.

*By the Court,* BOCKES, J. I. If we regard the action as one on contract, it is very plain that it cannot be maintained. The promise was wholly without consideration. In this view it amounts to this: The plaintiff said to the defendant, I owe you $18 for rent; you have sued me for it; if you will discontinue the suit I will pay you in a few days; that is, if you will discontinue the suit I will pay you in a few days what I am in law bound to pay you and ought to pay you to-day. To this the defendant assented. Nothing was paid or done as a consideration for what is claimed to be the defendant's promise to give time of payment and to discontinue the suit; nor did the plaintiff incur any new obligation or duty by his promise to pay what he then owed, in a few days. (28 *Barb.* 96. 1 *Wend.* 317. 19 *id.* 389. 1 *Comst.* 274.) This view of the case alone would dispose of it, if deemed an action on contract.

This case differs from *Cobb* v. *Curtiss,* (8 *John.* 470.) In that case the parties met and settled, and Curtiss paid Cobb three dollars; in consideration of which the latter promised

the former to go before the magistrate, pay the costs and discontinue the suit. Instead of doing so, however, he went before the magistrate on the return of the summons and obtained a judgment against Curtiss for $25 and costs of suit. The court held that this was a valid and binding agreement, on which an action would lie for its breach. The court remarked, the action " was for a breach of a promise, that in consideration of paying three dollars the defendant would go and discontinue a suit, pending before a justice." In the case cited the settlement and payment of the three dollars was held to constitute a consideration for the promise.

In *Smith* v. *Weeks*, (26 *Barb.* 463,) the action was to recover two payments which had been made on a contract, and not allowed to the party in a suit against him thereon. The action was sustained on the ground that the payments constituted a consideration for an implied promise to apply them on the contract. The court remark that " when the defendant received the money there was an implied agreement on his part, that these sums should be credited upon his account against the plaintiff." This case has been considerably criticised, and is of very doubtful authority. It seems directly in conflict with *White* v. *Merritt*, (7 *N. Y. Rep.* 352.) But the case in hand is not brought within the decision in *Smith* v. *Weeks*. In this case there was no settlement between the parties, nor was any thing paid on the indebtedness. So Bullard's promise had no other inducement or consideration than the naked promise of Farrington to do in a few days what he was, in law, bound to do instanter. The transaction, considered as an agreement, was simply a *nudum pactum ex quo non oritur actio.*

Perhaps it should be remarked that if the arrangement counted on is to be regarded as a matter between the plaintiff and defendant only, not binding or in any way affecting Gibbs or Dolly Bullard—and this the plaintiff insists upon— then the want of consideration for the defendant's promise is, if possible, the more apparent. In that case the defendant

must be considered in the position of any third person; and his promise would be most clearly without consideration.

It is suggested by the defendant's counsel, that if the action is to be deemed an action on contract, then Gibbs and Dolly Bullard were necessary parties. But the objection of non-joinder of parties defendant should have been taken by answer. It was not so taken; nor indeed was it urged at all before the justice.

But it is very obvious that the plaintiff's action cannot be sustained as an action on contract.

II. Nor can it be sustained as an action in tort, for fraud. Fraud, which is actionable in a court of justice, consists either in misrepresentation or concealment as to the existence or non-existence of some fact or circumstance. Bullard neither misrepresented nor concealed any thing. At most he but made a promise to do in future what he did not intend to do. Suppose a person borrows money on a promise to pay it in thirty days, can the lender sustain an action against him in fraud, by alleging and proving that he did not intend to pay him in thirty days, when he made the promise? Much more in a case like this, when the promise is without consideration, hence void as a promise, can the party recover against the other on his intention not to perform, when he cannot on his refusal or neglect to perform? I repeat, fraud, on which an action may be predicated, consists in a false statement, misrepresentation or concealment of the existence or non-existence of some fact or circumstance. This is the rule laid down in *Nichols* v. *Pinner,* (18 *N. Y. Rep.* 295,) and remarked upon in the same case by Judge Selden in 23 N. Y. Rep. on p. 274. (18 *Wend.* 608.) In *Higgins* v. *King,* (3 *Barb.* 616,) the fraud consisted in direct and positive acts of fraud, not merely in promises of future conduct. But this case last cited belongs to a different class of actions from the one under examination. It was a direct action to set aside the judgment alleged to have been recovered through fraud and artifice, not to recover damages for the fraud.

III. But this action cannot be sustained, assuming that the alleged fraud is fully proved. In order to recover, the plaintiff was bound to show the former judgment unjust. But the former judgment was conclusive of the facts determined by it. It imported absolute verity, and the plaintiff was estopped in this suit from showing the truth to be otherwise than was declared and determined by it. (15 *Barb.* 346.) The plaintiff's remedy was by a direct action to set aside the judgment on the ground that it was fraudulently obtained. He could not pay the judgment and then sue and recover the damages occasioned by the fraud, as he attempted to do in this case. This course would involve the necessity of inquiring collaterally into the fairness and validity of the former judgment, rendered by a competent tribunal having jurisdiction of the parties and of the subject matter. This point was expressly decided in *White* v. *Merritt,* (7 *N. Y. Rep.* 352.) In that case the plaintiff was sued by the defendants, but relying on their false statements, omitted to interpose a defense, allowed judgment to be taken against him by default, and paid the judgment. He then brought an action against them for the fraud, but it was decided in the court of appeals that he could not maintain an action against them for the injury, as it would enable him collaterally to impeach the judgment. In this case the plaintiff maintained his action on another branch of it, but on grounds in no way impugning the principle stated. Judge Welles in this case says, " The plaintiff seeks to avoid these consequences [the conclusiveness] of the judgment, by alleging fraudulent concealment and misrepresentation of facts by the defendants which induced him to omit defending the suit and to let judgment pass against him by default. That, however, is not a legal answer to the difficulty. It probably would entitle him to recover, provided the payment had been voluntary and induced by fraudulent concealment and misrepresentation. But no case has gone the length of deciding that after the proceeding has advanced to the maturity of a judgment and the

judgment collected on execution, it may be recovered back." The decision in the case cited is entirely decisive of this under examination, considered as an action on the case for fraud. (*See also* 1 *Pick.* 435, *and cases cited.*)

·Had the action by the defendant, Gibbs and Dolly Bullard, against the plaintiff been in this court, the latter could have had relief by special motion to vacate the judgment and to be let in to answer. As it was before a justice of the peace, he had a remedy before it was collected or paid, by direct action to vacate the judgment and to have it declared void for fraud. Actions for such purpose are very common. Such was the case of *Higgins* v. *King*, (3 *Barb.* 616.) *See also Dobson* v. *Pearce*, (12 *N. Y. Rep.* 156; *Vilas* v. *Jones*, 1 *Comst.* 274, 281; *Foster* v. *Wood*, 6 *John. Ch.* 87; 1 *id.* 402.) These are but few of the many cases reported in the books where actions have been brought to obtain relief against judgments alleged to be fraudulent or iniquitous. But, as was said in *White* v. *Merritt*, there is no case deciding that after a judgment has been duly obtained and collected on execution, the money can be recovered back in another action.

IV. It is insisted that the justice had no jurisdiction of the action. If the action be on contract it is clear that this objection is untenable. The code declares that justices of the peace shall have jurisdiction in actions arising on contract, for the recovery of money only. Then is this an action on contract? To me it seems very plain that it is. The gist of the action, as alleged in the complaint, is the defendant's promise—a promise to do a future act—and the damages consist in the breach of such promise. The allegation that he falsely and fraudulently promised the plaintiff that he would discontinue the action, does not change the nature of the action, any more than it would if the action had been on bond or promissory note, and there had been an averment that the defendant falsely and fraudulently promised to pay as in the bond or note specified. Notwithstanding this averment it is

an action on contract, and the justice has jurisdiction of the action.

The gist of the action is the promise and its non-performance. There are no misrepresentations or concealments stated, which make it other than simply an action for breach of contract. A mere intention to defraud, unaccompanied by any misrepresentation or concealment, is not such a fraud as gives a right of action. (18 *N. Y. Rep.* 295. 23 *id.* 264, 274.)

The charge of fraud might, with the same propriety, be made against the plaintiff for not paying the rent within a few days, as he promised. Suppose the defendant had discontinued the suit, and the plaintiff failed, as he did in fact, to pay the rent as he promised, and the defendant had sued him, and in his complaint had stated the agreement and its breach, could he have made it an action of fraud, by alleging that he fraudulently intended to obtain a discontinuance of the suit, and with that intent fraudulently and falsely promised, and falsely and fraudulently neglected and refused to perform? In such case, where the promise is to perform something in the future, and does not relate to some existing fact or circumstance, it cannot be made the basis of an action of fraud by any number of innuendoes as to a fraudulent design or purpose. Those epithets do not characterize the pleading, and, in a case like this, amount only to redundancy or surplusage. In my judgment the action, as stated in the complaint, is an action on contract.

If the action be deemed an action on the case for fraud, I am forced to the conclusion that it was not, at the time the action was tried, within the jurisdiction of a justice's court.

Under the revised statutes a justice of the peace had jurisdiction generally of actions on the case, with the exception of certain actions specified in § 4. It is conceded that under the revised statutes this action would fall within the jurisdiction of a justice's court; and it is highly probable that it was not the intention of the legislature to make any change,

by the adoption of the code, as regards the actions in which justices of the peace had jurisdiction. Still the question is whether it has, in fact, done so. We must be controlled by the language of the act, as to its meaning. The code (§ 53) declares that justices of the peace shall have civil jurisdiction in the following actions and no other. It then enumerates the actions in which justices of the peace have jurisdiction, under ten heads or subdivisions, none of which however need here be noted except subdivisions 2 and 9. Neither of the other subdivisions have any bearing on the question under examination. Subdivision 2, as it stood prior to the amendment of 1862, conferred jurisdiction on justices of the peace over actions for damages for an injury to the person or to real property, or for taking, detaining or injuring personal property. It must be a very strained construction to hold that any action for fraud could fall under this subdivision. The injuries to the person, intended to be covered by this subdivision, are such injuries to the person as result from negligence; and certainly this is not an action for an injury to real property, or for taking, detaining or injuring personal property. Besides, actions for fraud were and still are provided for under subdivision 9. Under this subdivision jurisdiction is declared in actions for damages for fraud in the sale, purchase or exchange of personal property. If subdivision 2, before its amendment in 1862, embraced all actions on the case for fraud, except those designated and excluded by § 54, then subdivision 9 was uselessly inserted.

It seems to me that subdivision 2, before the amendment of 1862, was intended, according to the fair import of its language, to have application only to actions for negligence, trespass *quare clausum fregit*, trespass *de bonis*, and trover—and that subdivision 9 was intended to cover all cases of fraud over which a justice of the peace should have jurisdiction.

The amendment of subdivision 2, in 1862, was intended,

I presume, to meet and remedy the objection to the jurisdiction here discussed.

The judgment of the justice was erroneous in every possible aspect in which it can be viewed. There are questions of evidence too, not here discussed, which would deserve notice if the case required it.

The judgment of the county court should be affirmed.

[SCHENECTADY GENERAL TERM, January 6, 1863. *Rosekrans, Potter, Bockes* and *James*, Justices.]