SIMEON ROUSE, Appellant, *v.* EBENEZER E. LEWIS,
Respondent.

Where a purchaser contracts for chattels, to be delivered within a speci-
fied time, he is not bound to accept them after breach of the agreement,
unless he caused the delay or waived punctual performance.

Where the price is paid in advance, and the vendor fails to perform within
the time agreed, the purchaser may resort at once to his action for
violation of his contract.

A refusal to accept an article on the ground that it does not conform to
the contract is not, in itself, an agreement to accept it afterward if
such objection be obviated.

Where there is no evidence to warrant a jury in finding a waiver of the
conditions of an agreement, or an extension of the time for performance,
the judge is not bound to instruct them as to the legal effect of such a
waiver or extension.

APPEAL from an order made at the General Term in the
fifth district, reversing a judgment in favor of the plaintiff,
and granting a new trial.

The action was for damages sustained by a breach of agree-
ment by the defendant. The complaint alleged that, on the
12th of June, 1860, the plaintiff sold and delivered to the
defendant his horse, harness and carriage, in consideration
of which the defendant agreed to sell and deliver to him,
within two weeks thereafter, two new mowing machines of
"Hubbard's patent," of the same kind and qualities, save in
certain particulars specified, as those then being constructed
at the shop of Bradley & Son, in Syracuse, where the ma-
chines were to be delivered; that the defendant received the
consideration and violated the agreement, and that the value
of the property to be delivered was $250, for which amount
the plaintiff claimed judgment.

The answer alleged that the agreement related to two
machines manufactured in 1858, on which the defendant was
to make certain improvements and alterations; that the bar-
gain was for their delivery at Bradley's shop, not within two
weeks, as alleged by the plaintiff, but in time for sale for the

mowing season of that year; that he was ready, and offered to deliver them, so altered and improved, in time for that purpose, and that the defendant refused to accept them.

The cause was tried at the Onondaga Circuit, before Mr. Justice MORGAN, in February, 1861.

The principal question litigated on the trial was the issue made by the pleadings—whether the agreement was, that the machines should be delivered within two weeks, as alleged by the plaintiff, or in time for sale for the mowing season, as alleged by the defendant.

If they were to be delivered within two weeks, the proof was clear and undisputed that when the plaintiff demanded them, at the expiration of that time and at the place appointed, they were neither delivered nor ready for delivery.

If they were to be delivered on the 4th of July, and not before, as the defendant testified, the proof was equally clear that they were at Bradley's shop on that day ready for delivery and complete, if they could be said to be ever complete.

It was proved by the witnesses on both sides, that the bargain was made on the 12th of June, 1860, in the street in front of Bradley's shop. The horse, harness and carriage were received at the time by the defendant.

It was proved by both parties that the contract was for the delivery of the mowers within an agreed and definite period, though they differed as to what that period was. The fact is undisputed, that, when the bargain was made, the plaintiff said to the defendant, when he proposed to leave the time indefinite: " Mr. Lewis, that won't do; if you can set some certain time that you can deliver them to me, I want to know, as I want to sell them, and I want some certain time, so that I can promise to deliver them." It was in answer to this that the time was fixed; and the bargain was then concluded.

If the testimony of the plaintiff and his witnesses was true, the time fixed was two weeks. The proof was clear and unequivocal. The plaintiff testified that the defendant, in reply, agreed that he should have them *in two weeks.*

The witness Petrie testified that the defendant stated to him on the day of the bargain, that he had agreed with the plaintiff to have the machines ready in two weeks. The witness Brockway testified that on the 4th of July the defendant admitted to him that "he knew they were to be done before." It is proved and undisputed that the plaintiff acted on this assumption, that at the expiration of two weeks he demanded the machines at Bradley's shop, and they were not then completed.

The defendant, without denying these specific allegations of the plaintiff's witnesses, testified, on his direct examination, that, at the time of the bargain, he told the plaintiff "they would be done in time for selling that season;" and at a later stage of the trial, that "the machines were to be done by the 4th of July." Two witnesses, Ronney and Hubbard, testified that they did not hear the whole conversation, but they heard the defendant say they should be done in time for sale.

In respect to this branch of the case, the defendant requested the court to charge the jury, in substance, that the testimony of the parties being balanced, they should regard it as if no evidence had been given. The court refused, and the defendant excepted.

An exception was also taken to a remark of the judge, in the course of his observations upon the facts, that the witnesses in the shop would be likely to be subject to some bias of feeling. The proof was that the proprietors of the shop were the manufacturers and salesmen of the defendant's machine; that it was there that the bargain was made, that the work was done, that the machines were to be delivered, and that the neglect occurred of which the plaintiff complained.

An exception was also taken to the refusal of the court to charge the jury "that, if they believed, from the evidence, that the plaintiff notified the defendant, before the time expired for altering the machines, that he would not take them, then the defendant was not in default for not getting them ready in time."

The evidence to which this request had reference was, in substance, this: At the expiration of the two weeks, the plaintiff went, with Brockway, to Bradley's shop to get the machines. The defendant was not there, but the foreman was. The foreman said the machines were there, but they were not ready. One of them he pointed out in a vacant lot and the other was in the shop unfinished. The plaintiff saw, by the condition of the cogs, and by the marks of tar and oil, that it was not a new machine, and he so stated to the foreman, who admitted that it was an old machine. The time for delivery under the contract had expired, and the foreman says that the machines were not done; and he also testifies that, on the following Saturday, the plaintiff told him that, finished or unfinished, he should not take them. The plaintiff admits that, on discovering that one of the machines was an old one, and still unfinished at the end of the two weeks, he told the foreman that he would not take it. He told Hubbard the same day that he should not take them; and the proof clearly fixes the date, being the day on which Brockway was with him, when, at the end of the two weeks, the mowers were found unfinished. The defendant also testified that the plaintiff, at his second interview with him at Bradley's office, complained of his violation of the contract, and offered to rescind the contract and take back the horse, harness and carriage, which the defendant refused; and he says that the plaintiff then told him he need not finish the machines, and that he would not take them if he did. The conjecture of the defendant was, that this interview probably occurred on the 23d of June; but the other two witnesses whom he called failed to corroborate him on this point, and the date of the interview was fixed clearly by the proof as in the first week of July. The jury would not have been warranted by the evidence in finding that it occurred before the 2d of July; and the diary, on which the plaintiff relied to establish an *alibi*, showed that he was at Syracuse on the morning of the 3d of July, at the hour when Ketchum, who was with the plaintiff, swears the interview took place. It was shown by the defendant's witnesses that, on the 23d of

June, the work on the machines had not even been begun, though the contract was made on the 12th; and the tenor of the conversation, as detailed by the defendant and his witnesses, clearly shows that it did not occur until after the demand at the expiration of the two weeks.

There was no evidence that the plaintiff waived the conditions of the contract, or consented to any extension of the time fixed for performance. The proof was clear that the defendant did not stop the work after it was begun, but pushed it vigorously to completion, and it was ready at the place of delivery on the 4th of July, the day appointed, if his was the true version. The defendant complained that the plaintiff held him strictly to the contract, though he admits his own refusal to rescind. On the 4th of July, he told the witness, Brockway, that he knew the machines were to have been done before, and wished him to take and sell them.

Evidence was given on both sides as to the market value of the machines; and the defendant excepted to the refusal of the court to permit him to show, in addition, the rates at which the agents received them from his manufacturer.

The jury found a verdict in favor of the plaintiff for $176.94. A motion for new trial upon the facts was denied; but the judgment was reversed at the General Term, Mr. Justice MORGAN dissenting. The ground of reversal was the refusal to charge in accordance with the third request of the defendant, as to the effect of notice by the plaintiff, that he would not take the machines.

*Henry C. Leavenworth,* for the appellant.

*Angus McDonald,* for the respondent.

PORTER, J. The judgment was reversed in the court below, on the ground that the judge erred in refusing to instruct the jury, that the defendant was not in default for omitting to have the machines ready in time, if they believed that before the time expired, he was notified by the plaintiff that he would not take them. The decision was made upon

the argument, the judge who tried the cause dissenting; and we think it quite apparent that the reversal was due to a misapprehension of the facts.

The contract, on the part of the plaintiff, was completely executed at the time it was made. All that he undertook to do, was done at once. He owed no remaining duty to the defendant, who received his pay in advance, for the property he engaged to deliver. The parties afterward differed as to the period fixed for delivery; but there was not a scintilla of evidence that the plaintiff ever consented to any extension of the time, or intimated either by word or act that he did not intend to hold the defendant to a strict performance of the contract. Of this, the latter had no right to complain, for he admits that when the plaintiff called for the machines, and claimed that they were to have been furnished in two weeks, he refused 'to rescind the contract and restore the consideration, though the articles were not in readiness for delivery.

The proposition which the judge was requested to submit to the jury, was wholly unwarranted by the evidence, and could only tend to mislead them, as well in respect to the nature of the issue as to the legal effect of the proof. The parties both testified that the contract was for the delivery of the machines within a fixed period; and the vital and controlling question in the case was, whether the time limited for performance by the defendant was the 4th of July, as he testified, or the 27th of June, as proved by the plaintiff and his witnesses. If the 4th of July was the day, the defendant was not in default; for the proof is clear that the machines were then at the appointed place and complete, so far as they were ever completed. If the 27th of June was the day, the parties and their witnesses all agree that the mowers were then unfinished. In either aspect of the proof, therefore, the proposed instruction was irrelevant. If the time did not expire until the 4th of July, there was no default to be excused. If it expired at the end of two weeks, as the plaintiff proved, there was no testimony to warrant the assumption, either by the court or the jury,

that the completion of the machines had been delayed by any such notice from the plaintiff. The bargain was made on the 12th of June, and the defendant proves that his employees gave their attention first to the manufacture of his mowers of the new pattern, and did not commence work on these until the 24th. This was the delay which retarded the delivery of the machines, but after they began the work, it was prosecuted vigorously to completion, and the mowers were in readiness on the 4th of July, which the defendant claims to have been the appointed day.

The declarations to which the proposition refers, were not made by the plaintiff until after the two weeks had expired. There was some slight confusion of dates on the part of the witnesses, as usually happens after a considerable lapse of time. This was cleared up, however, by unmistakable proof. The order of the successive interviews was fixed beyond all question. It would have been the plain duty of the court to set aside as against evidence a finding that either of the declarations in question were made by the plaintiff prior to the demand of the machines on the 27th of June. They were all of the same tenor. In each case he was complaining of the defendant's breach of contract, in not having the mowers ready at the appointed time. It was in reference to this violation of the agreement, that he declared he would not take them, even if the defendant went on and completed them afterward. There was no waiver of his rights under the contract, but a constant assertion of those rights. There was no pretense on the part of the defendant or his witnesses of any assent by the plaintiff to delay, or any waiver of strict performance. The parties were throughout in a position of direct antagonism, each insisting on his own version of the contract, and each standing on his legal rights under it. The issue made by them was precisely that which the court committed to the jury. If the time fixed for delivery was the 27th of June, the contract was broken, and the plaintiff was not bound to accept the machines. If the delivery was to be on the 4th of July, the agreement was performed, and the defendant was entitled to a verdict.

The appellant was right in claiming that when one of the parties to a contract, containing mutual and dependent stipulations, either prevents or waives its punctual fulfillment by the other, he cannot afterward complain of the delay to which he assented. (*Young* v. *Hunter* 2 Seld., 205; *Hasbrouck* v. *Tappan* 15 Johns., 200.) It is also true that a defendant, under an answer alleging the fulfillment of such an agreement, is at liberty to prove that strict performance was prevented or waived by the plaintiff. (*Holmes* v. *Holmes*, 5 Seld., 525.) But these rules have no application to a case like the present, where the plaintiff neither waived nor prevented performance by the defendant. The only legitimate issue was that which the judge submitted to the jury. A charge in the terms of the proposed request would have been inappropriate to the facts, and fatal to a verdict in favor of the defendant. A judge is not at liberty to instruct a jury, to base their findings on a hypothesis unwarranted by the evidence. (*Story* v. *Brennan*, 15 N. Y., 524.)

We have examined the other exceptions taken on the trial, and we think they are, all untenable.

The order granting a new trial should be reversed, and judgment on the verdict affirmed.

HUNT, J., read an opinion for affirmance.

WRIGHT, PECKHAM, LEONARD and MORGAN, JJ., concurred in the opinion of PORTER, J.

SMITH and DAVIES, JJ., concurred in the opinion of HUNT, J.

Order reversed and judgment for plaintiff on verdict.